IN RE ESTATE OF PHILLIP SULLIVAN.
C. H. HENDRICKSON, APPELLANT, V. ESTATE OF PHILLIP SULLIVAN ET AL., APPELLEES.

19 N. W. 2d 372

FILED JUNE 29, 1945. No. 31963.

*C. H. Hendrickson, pro se, Mark J. Ryan*, for appellant.

*Fred S. Berry*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This action involves two claims for attorney's fees filed against the trust estate of Phillip Sullivan, deceased. The county court and the district court denied the claims. Claimant, herein called the plaintiff, appeals. We affirm the judgment of the trial court.

Mr. Sullivan died testate October 5, 1919, possessed of a

considerable estate, including large holdings of farm land. His will, admitted to probate in November, 1919, provided that H. F. Wilson and H. S. Ringland should be his executors, and later trustees, of his estate to handle the same, reduce it to cash and distribute to named beneficiaries. The executors as such were discharged in 1921 and the property assigned to them as trustees. Thereafter, the two trustees administered the trust, and early in the trust period were paid substantial fees as trustees. In 1924 Mr. Wilson died, and Mr. Ringland continued as sole trustee until his death November 9, 1932.

A. R. Davis represented the trustees as their attorney. He died in March, 1929. He was associated with plaintiff in the practice of the law.

Plaintiff's first claim, in the order in which they arise, is for the sum of $1,000 for representing said estate for the years 1930, 1931 and 1932. The second claim is in the sum of $200 for services in representing the estate and legatees in preparing objections to the final report of the trustee made by his estate, and in filing a claim against the Ringland estate in behalf of the trust estate.

The evidence presented to sustain the claims consists of the testimony of the plaintiff, exhibits of various court proceedings, and originals and copies of letters from plaintiff's files concerning this estate and plaintiff's connection therewith. From this file of correspondence, the court proceedings and plaintiff's testimony, the picture can be developed.

We consider the claims in the above order.

Plaintiff testified that during the years mentioned, he represented the trustee in estate matters. He testified that he prepared three reports of the trustee covering the period from June 13, 1929, to February 3, 1932. These reports consist of a tabulation of receipts and disbursements, and show balances on hand. They were prepared from data furnished by the trustee. Plaintiff also testified that during this period of time, he went with the trustee to visit the lands, inspect fences and wells, care for property, and to collect rents—sometimes a difficult task. He corresponded

with two bonding companies and secured a bond for the trustee. Those in general were his services, except as to the matters now to be mentioned. It appears that in February, 1932, one of the beneficiaries of the trust named Whitlatch undertook to secure a distribution and a payment of her share of the trust estate. Some litigation followed about the appointment of a second trustee. An attempt also was made to set aside specific property to this beneficiary. Considerable correspondence was had and papers were prepared for filing an action to secure the above result. These papers were not filed because of the death of the trustee.

A member of the bar of Illinois, William M. Walker, represented the principal beneficiary of this trust. Plaintiff's correspondence file begins with a letter from Mr. Walker to A. R. Davis, dated February 17, 1932, concerning the Whitlatch attempt to secure distribution. This letter was turned over to plaintiff by the trustee, and thereafter plaintiff rendered services to the trustee in that matter. The trustee also answered that letter of Mr. Walker and advised him of the death of Mr. Davis three years earlier, and that " * * * *as nothing has come up until this time,* this is perhaps the reason that his death has not been brought to your attention." (Emphasis supplied.) It then appears that the trustee did not consider that he had employed an attorney prior to that time. It also appears that prior correspondence concerning the trust estate was in Mr. Davis' files, and apparently covered matters handled by him. This written record, made at the time, rather definitely fixes the date of the beginning of plaintiff's services as in February, 1932.

Under date of March 29, 1932, plaintiff advised Mr. Walker that he would appear for "all defendants" in the actions brought by Whitlatch. It further appears from a letter dated April 21, 1932, that the trustee did not file objections in the Whitlatch action in county court.

Mr. Walker's client was concerned about expenses of administration. Under date of October 1, 1932, he wrote the plaintiff asking for "a statement of all existing expense of

administration against the estate" and "the amount of expense occasioned by the activities of the Whitlatch interests, also the expense, if any, that may exist otherwise and also an estimate of the probable expense to finally close this estate." Plaintiff replied to this letter on October 4, 1932, and stated:

"You already have reports showing fully all statements of expenses in connection with this estate, and there should be no further expenses except the usual run of affairs, which no doubt will be small.

"The expenses of litigation that the Whitlatches brought about to the estate are as follows:

"Court costs paid to date by defendants    50¢
In addition I will charge an attorney fee of $200.00.

"The future expenses of this estate no one can determine in advance, but they ought not to be great, depending, of course, on what is being done, but in all events they could not be large."

Mr. Walker acknowledged this letter on October 5, stating it was the information wanted as he "thought there might be in existance at the present time charges and expenses that had never been paid or statement made * * * ." Thereafter, the final report of Mr. Ringland was made by his administrator. It shows that on October 28, 1932, the trustee paid plaintiff for services in county and district courts in re Whitlatch v. Sullivan, per statement October 24, 1932, $200.02. Plaintiff admits the receipt of this payment, but testifies that it was limited to services performed in the two court cases. Thereafter, the trustee's report was allowed in 1933 and his bond released.

In April, 1944, plaintiff filed his claim in county court for $1,000 attorney's fees. The trustees objected to the allowance of this claim and required strict proof. They pleaded payment of the claim; that it was not a valid claim against the trust property; and that the claim was barred by the statute of limitations and by estoppel and laches.

It seems to us from this record, and in particular from the plaintiff's letter of October 4, 1932, that he contemplated

a charge against the estate of $200, which would constitute the charge for all services rendered, and that there would be no further charges except "future expenses" which "ought not to be great." Accordingly, we find that the plea of payment of this claim is sustained.

The second claim arises out of events following the death of the trustee. The filing date does not show in the transcript, but the parties treat it as having been filed in July of 1933.

Again, we go to the correspondence and the court proceedings for information as to what took place. It appears that the trustee had for some time held substantial balances of cash on hand. The principal beneficiary had, prior to the death of the trustee, raised the question of the estate being entitled to interest on this fund. Plaintiff had taken the position that no interest was payable. After the trustee's death, Mr. Walker again raised that question with the plaintiff. He also raised a question regarding the fees already paid to the trustees, taking the position that the fees paid were to cover the entire cost of administration; that the estate of the trustee should pay all subsequent costs of administering the estate; that Mr. Ringland, as sole trustee, was negligent in not filing a claim in the estate of trustee Wilson for fees paid and not earned; that the estate of trustee Ringland should pay interest on the trust funds held by him.

New trustees were appointed in January, 1933. They did not qualify for reasons hereinafter mentioned. No one represented the estate. There was correspondence between plaintiff and Mr. Walker about the appointment of trustees.

Plaintiff advised Mr. Walker that he did not represent any one after Mr. Ringland's death. On December 1, 1932, Mr. Walker wrote plaintiff about filing a claim against the Ringland estate, and asked if he (plaintiff) would be in a position "to handle such a claim on a contingent fee basis?" On December 3, 1932, plaintiff wrote Mr. Walker that he saw no reason why he could not represent a claim against the Ringland estate and would "be glad to work with you in any way that we can." On January 17, 1933, Mr. Walker

wrote a general letter to the heirs, in which he suggested that a claim be filed against the Ringland estate and also. objections be filed to the final report of the trustee. The letter concludes with a request for information as to whether other beneficiaries were willing to join with the principal beneficiary in so proceeding, and in employing an attorney at Wayne and "to allow him up to fifty percent of the amount that could be recovered for his compensation?" Under date of February 27, 1933, Mr. Walker wrote plaintiff that he had not "received instructions from all of the Sullivan legatees agreeing to your employment" and asked for a letter advising as to the terms under which plaintiff was handling the matter as his (Walker's) client desired to have the "arrangement made in formal shape." We find no answer to that letter in the files.

Plaintiff testified that he filed the claim hereafter mentioned against the Ringland estate under an arrangement with Mr. Walker.

The administrator for the trustee had filed a final report on January 9, 1933, in which he asked, among other things, for the allowance of additional fees.

Plaintiff and Mr. Walker discussed this matter by correspondence. Plaintiff wrote Mr. Walker on November 25, 1932, about filing a claim against the Ringland estate for costs, expenses, or a rebate of fees and expressed the thought that "nothing much could be accomplished by it * * * ." Plaintiff and Mr. Walker, for the principal legatee and some of the others, prepared and, on January 27, 1933, filed objections to the allowance of the final report of the trustee. This was based generally upon the grounds above enumerated as to the claim against the Ringland estate, and included objections to the allowance of any further sums to the trustee. Thereafter, on April 4, 1933, a claim was filed on behalf of certain of the legatees against the estate of Ringland, covering the matters herein mentioned, for the total sum of $25,000. Plaintiff on February 6, 1933, wrote Mr. Walker expressing the view that the county court would hold against them but that they should appeal "because they

will not want it tied up that long, and we will get a substantial settlement out of them."

The matter then took its course. The final report of the trustee was approved and no further allowance for service or expense made. On July 17, 1933, the claim against the Ringland estate was disallowed. It appears that this disposition of the two was according to an agreement reached by the various parties. Thereafter the new trustees qualified and administered the trust.

In the meantime there were no trustees of the estate. Plaintiff testified that while those objections were standing on the record, the new trustees could not give a bond and could not qualify, and the objections were withdrawn so that the new trustees could give a bond and qualify.

He further testified that the benefit to the trust estate by the filing of these objections was that no further allowance was made to Mr. Ringland's estate from the trust funds. His claim here is based on securing that benefit to the estate.

In the exhibits there is a letter written to the plaintiff on July 19, 1933, by the attorney for the Ringland estate, with reference to the disallowance of that claim. From the recital therein it appears that an attorney representing certain of the heirs had expressed the opinion that it was not proper to allow plaintiff a fee from the trust estate; that no final determination was reached; and that the court's impression seemed to be that the estate had not been benefited by what was done. Thereafter this claim for fees was filed.

From this record furnished by the plaintiff, it appears that he undertook the work of representing certain beneficiaries relying upon a contingent fee based upon the amount recovered for the estate. No recovery was had. It also appears that no additional fee was allowed the trustee. But there is no showing here that one would have been allowed had the objections not been made, nor is there a showing of the amount that was claimed for the trustee. At one point in the negotiations a small fee was suggested. Hence, any effort to calculate possible benefits would be purely speculative. There is another matter to be consid-

ered.  From January to July, 1933, this large estate was without a trustee to manage it. The evidence shows that the landlord's share of crops was being neglected, new leases needed to be made and were not, tenants were in doubt as to what to do, collections were not being made, and the trust estate was not being cared for properly.  According to the plaintiff's testimony, the pendency of these objections prevented the new trustees from qualifying.  The loss to the estate, if any, as a result of this delay is not shown. The spring and summer of 1933 were trying times in Nebraska, as throughout the United States.  If we were permitted to speculate, it might well be the conclusion that these objections could have caused far more damage. to the estate than the claimed benefits.  But we will speculate neither as to the benefits nor detriments caused by these claims.

In *In re Estate of Love,* 136 Neb. 458, 286 N. W. 381, we stated the following rule: "An allowance may not be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate unless the services redounded to the interest of all persons interested in the estate and were beneficial to the estate."  The principle there is applicable here, and requires a denial of the fee claimed.

The judgment of the district court is affirmed.

AFFIRMED.